# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HOTEL OAKLAND ASSOCIATES,<br>        *Plaintiff*,<br><br>    v.<br><br>DOYLE REAL ESTATE ADVISORS,<br>LLC, et al.,<br>        *Defendants*. | CIVIL ACTION<br>NO. 21-0004 |

**PAPPERT, J.**                                                                                                **July 13, 2021**

## **MEMORANDUM**

       This case involves an allegedly negligent study of the market rental value of a property in Oakland, California pursuant to a contract between a California licensed real estate appraiser and a California based contract administrator affiliated with the Oakland Housing Authority. While the appraiser lives in New Jersey and his company is a New Jersey company with a registered office in that state, Hotel Oakland Associates sued them both in the Philadelphia County Court of Common Pleas, ostensibly because that is where the company's principal office is located.

       The Complaint makes clear, however, that a substantial part of the events or omissions giving rise to the claims therein occurred in California and that much of the evidence and many of the witnesses are there as well. Because it would better serve the interest of justice, the Court transfers this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).

I

       Hotel Oakland Associates owns and operates Hotel Oakland Village, an

Oakland, California residence for low income seniors covered by Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437(f). (Compl., ECF 1-4, ¶ 5.) Following its unsuccessful application to the U.S. Department of Housing and Urban Development for a rent increase under the Mark-Up-To-Market program, Hotel Oakland sued Doyle Real Estate Advisors, LLC, a commercial valuation and appraisal consulting firm, and John Doyle, a licensed appraiser and principal of the firm (collectively Doyle), asserting claims for professional negligence, tortious interference with prospective contractual relations and civil conspiracy. (*See id.* ¶¶ 35, 232-268.) Doyle prepared a Rent Comparability Study, or RCS, for the Hotel Oakland for HUD's Multifamily Housing San Francisco Region. (*Id.* ¶ 94.)

Hotel Oakland sued Doyle in the Philadelphia County Court of Common Pleas, alleging Doyle Real Estate Advisors' "principal office" is in Philadelphia. (*Id.* ¶ 2.) Doyle Real Estate Advisors is a New Jersey limited liability company, with a registered office address in Haddonfield, New Jersey. (Notice of Removal, ECF 1 at ¶ 55.) John Doyle, a citizen of Haddonfield, New Jersey, is Doyle Real Estate Advisors' sole member. (*Id.* ¶¶ 56, 58.) Hotel Oakland Associates is a Massachusetts limited partnership with its principal place of business in Oakland, California. (Compl., ECF 1-4 at ¶ 1.) Its partners are citizens of Massachusetts and California. (Notice of Removal, ECF 1 at ¶¶ 61-74.) Because this case is between citizens of different states and the amount in controversy exceeds $75,000[1], Doyle removed it to this Court

---

[1] Hotel Oakland Associates demands damages "in an amount in excess of $50,000" (Compl., ECF 1-4 at ¶¶ 239, 250, 257, 268) and the allegations in its Complaint make clear that it seeks to recover damages well in excess of $75,000.

2

pursuant to 29 U.S.C. § 1332(a).[2] (*Id.* ¶¶ 50-76.)

The Court ordered Doyle "to address the question of whether venue is proper in this District" (ECF 4), and it did so in briefing its motion to dismiss. (Defs.' Br. in Support of Mot. to Dismiss, ECF 5-2 at 10.) In short, the Philadelphia County Court of Common Pleas is in the Eastern District of Pennsylvania, so venue is proper under 28 U.S.C. § 1441(a). *See Polizzi v. Cowles Mags., Inc.*, 345 U.S. 663, 665 (1953) ("Section 1441(a) expressly provides that the proper venue of a removed action is 'the district court of the United States for the district and division embracing the place where such action is pending.'") (quoting 29 U.S.C. § 1441(a)). The Court nonetheless may consider whether transfer to the Northern District of California is appropriate.

II

28 U.S.C. § 1404(a) allows a court to transfer a federal action from one district to another "[f]or the convenience of parties and witnesses, in the interest of justice" if the transferee court is one in which the action originally could have been brought.[3] The provision "was intended to vest district courts with broad discretion to determine, on an

---

[2] In its Notice of Removal, Doyle also contends the Court has federal question jurisdiction over Hotel Oakland's state law claims, because they "are expressly predicated on, and inextricably tied to, alleged violations of federal statutes, regulations, and the HUD Guidebook, as well as allegations that HUD, a federal agency, conspired with Doyle to injure Plaintiff." (ECF 1, ¶¶ 77-82.)

[3] The Third Circuit has held that a Court "may transfer a case at the parties' request or sua sponte . . . ." *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020); *see also See Amica Mutual Ins. Co. v. Fogel*, 656 F.3d 167, 180 (3d Cir. 2011) (implicitly affirming district court's *sua sponte* venue transfer under Section 1404(a)); *Laferty v. Gito St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007) ("Section 1404(a) transfers are discretionary determinations made for the convenience of the parties."). District courts have frequently exercised their discretion to do so. *See, e.g. Minter v. Acme Mkts.*, No. 20-1087, 2020 WL 1450860, at *2-3 (E.D. Pa. March 25, 2020) (transferring case pursuant to Section 1404(a) *sua sponte*); *Bent Glass Design c. Scienstry, Inc.*, No. 13-4282, 2014 WL 550548, at *6 (E.D. Pa. Feb. 12, 2014) ("[W]hile venue is initially reliant on a plaintiff's preference as reflected in the pleadings, a district court may upon motion or *sua sponte* dismiss or transfer a civil action to any other district in the interest of justice and/or for the convenience of parties and witnesses."

3

individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).

A

This case could have been brought in the Northern District of California because "a substantial part of the events or omissions giving rise to [Hotel Oakland's claims] occurred" there. 28 U.S.C. § 1391(b). Those claims are substantially premised on the valuation of the building it owns and operates in that District (*see* Compl., ECF 1-4 at ¶¶ 5-6), including Doyle's alleged acts and omissions in appraising it. (*See id.* ¶ 174-180.) Hotel Oakland alleges Doyle failed to obtain "the market and geographic competence necessary" to properly appraise the Hotel Oakland and it lacked "adequate knowledge of the local market" in "breach of its duty of care as a professional appraiser." (*Id.* ¶¶ 175, 180.) It suggests "an appraiser familiar with the Oakland market and geographic area" – i.e., someone based in the region – would have known better than to select the properties Doyle used in preparing its rent comparability study. (*Id.* ¶¶ 178-79.)

Hotel Oakland alleges that Doyle, while on his way from Philadelphia to Hawaii, only "spent about 90 minutes conducting his site inspection" and that he never attempted to visit or inspect the local properties he ultimately selected, wrongly in Hotel Oakland's view, as "comparables." (*See, e.g., id.* ¶¶ 52, 100-104, 148-150, 176.)

Hotel Oakland unsuccessfully applied for a rent increase through California Affordable Housing Initiatives, Inc. (CAHI), a Section 8 Contract Administrator affiliated with the Oakland Housing Authority. (*Id.* ¶¶ 11, 74.) A California-licensed

4

real estate appraiser with "extensive experience in the San Francisco Bay Area real estate market, including Oakland," prepared Hotel Oakland's RCS. (*Id.* ¶ 76.) He inspected Hotel Oakland's interior and exterior along with the exteriors of five comparable properties in the area and the common area interiors of four of the comparables. (*See id.*, Ex. E (Rent Comparability Study Prepared by Dennis B. Cunningham for the Langelier Company, San Francisco, CA) at 1, 28-29.)

CAHI then retained Susan M. Burnett, "a local independent appraiser" to conduct a required review[4] of Hotel Oakland's RCS and it evaluated Hotel Oakland's Mark-Up-To-Market application in California. (Compl., ECF 1-4, at ¶¶ 82, 86.)

Because of the comparable market rents identified in Hotel Oakland's RCS, Monica Baptista of HUD's Multifamily Housing San Francisco Region directed Doyle to prepare a HUD-sponsored RCS for the property. (Compl., ECF 1-4, ¶ 89.) It did so pursuant to a five-year fixed-price contract Doyle had with HUD's San Francisco/West Region Multi-Family Housing Region. (*Id.* ¶¶ 92-94.)

Hotel Oakland alleges individuals including Davin Lal, an Account Executive for HUD's Asset Management Division in its West Multifamily Regional Center, pressured a CAHI Asset Management Manager "to provide incorrect and misleading information and direction to Ms. Burnett so that HUD could avoid having to pay Hotel Oakland Associates fair market rents . . . ." (*Id.* ¶ 83.) It alleges HUD employees including Lal "wrongfully pressured Doyle" to disregard or undervalue Hotel Oakland's on-site health and wellness services and to select comparables lacking the same services. (*Id.* ¶ 95.)

---

[4] CAHI "retains an independent appraiser to review" rent comparability studies "to determine whether the market rent determinations in the [rent comparability study] comply with [HUD's Section 8 Renewal Policy Guidebook] and are appropriate." (Compl., ECF 1-4 at ¶ 37 n.11.)

5

Ultimately, the Director of the Asset Management Division of HUD's Multifamily West Region told Hotel Oakland that HUD had denied its application. (*Id.* ¶ 208.) Nothing in the Complaint suggests the HUD office(s), HUD staff – including the alleged HUD conspirators – or HUD-affiliated entities relevant to Hotel Oakland's claims are based anywhere other than in California.

The claims in this case are substantially about events and omissions tied to the Northern District of California.

### B

The question then is whether a transfer of venue under Section 1404(a) is appropriate in the interest of justice. "[T]here is no definitive formula or list of the factors to consider." *Jumara,* 55 F.3d at 879. Courts weigh private factors including "whether the claim arose elsewhere"; the "plaintiff's forum preference as manifested in the original choice"; the defendant's forum preference; "the convenience of the parties as indicated by their relative physical and financial condition"; "the convenience of the witnesses – but only to the extent [they] may actually be unavailable for trial in one of the fora"; and the location of relevant files – "to the extent [they] could not be produced in the alternative forum." *Jumara,* 55 F.3d at 879.

Courts also consider public factors including: "the local interest in deciding local controversies at home"; the forums' public policies; "the trial judge's familiarity with applicable state law" for claims brought under diversity jurisdiction; "practical considerations that could make the trial easy, expeditious or inexpensive"; "the enforceability of the judgment"; and court congestion in the competing forums. *Id.* at 879-80. When a court considers "all relevant public and private interest factors, and . . .

its balancing of these factors is reasonable, its decision deserves substantial deference." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981).

1

Private factors weigh in favor of transfer. Neither party to this lawsuit resides in this district. Doyle removed the case here because 28 U.S.C. § 1441(a) required it to do so. (*See* Defs.' Mot. to Dismiss, ECF 5-2 at 10.) Hotel Oakland did not choose to file its Complaint in the Eastern District of Pennsylvania, although its preference for this forum is shown by its filing in the Philadelphia County Court of Common Pleas. *See, e.g.*, *Battle v. Wal-Mart Stores, Inc.*, No. 19-cv-0945, 2019 WL 5290540, at *2 (E.D. Pa. Oct. 17, 2019) (considering the Eastern District of Pennsylvania the plaintiff's chosen forum in action removed from Philadelphia County Court of Common Pleas). Regardless, "[w]hen the vast majority of the acts [or omissions] giving rise to plaintiff's claims take place in another forum, that weighs heavily in favor of transfer." *Leatherman v. Cabot Oil & Gas Corp.*, No. 12- 3783, 2013 WL 1285491, at *3 (E.D. Pa. Mar. 29, 2013) (citation and internal quotation omitted).

In its response to Doyle's motion to dismiss, Hotel Oakland notes that the Hotel and its principal place of business are both in California. (Pl.'s Opp'n Br., ECF 13 at 13.) Doyle's contract to perform rent comparability studies was with "a HUD regional office located in California." (*Id.*) Doyle conducted his allegedly insufficient inspection of the property, obviously, in California. (Pl.'s Opp'n Br., ECF 13 at 13.) Hotel Oakland's alleged "loss of market-rate contract rents" occurred in California. (*Id.*) CAHI's review of Hotel Oakland's Mark-Up-To-Market application and the determination giving rise to its alleged damages – HUD's Multifamily West Region's

7

denial of the application – all took place in California. (*See* Compl., ECF 1-4, at ¶ 11.) "Typically the most appropriate venue is where a majority of events giving rise to the claim arose." *In re Amkor Tech., Inc. Sec. Litig.*, No. 06-298, 2006 WL 3857488, at *5 (E.D. Pa. Dec. 28, 2006). Here, that is the Northern District of California.

2

Public factors also weigh in favor of transfer. Hotel Oakland contends "California would have a great interest in a case about a California-licensed appraiser's grossly negligent assessment of market rents for an 'important affordable housing resource' in Oakland" as it allegedly "affects the viability of quality affordable housing for low-income seniors in California." (Pl.'s Opp'n Br., ECF 13 at 13.) It argues Doyle could not render an appropriate appraisal because, as a non-local, he was not sufficiently familiar with the Oakland real estate market. (Compl., ECF 1-4 at ¶ 174-180.) Yet it now asks a Pennsylvania court to apply California law and decide whether Doyle was negligent, interfered with its prospective contractual relations or economic advantage, or conspired with non-party California-based HUD officials.[5] (Pl.'s Opp'n Br., ECF 13 at 13.) The Northern District of California is obviously more familiar with California law and better situated to address questions involving the California real estate market. The property at issue, much of the evidence and most of the witnesses are in the Northern District of California. Judgments in this District and the Northern District of California are equally enforceable. As for court congestion, the average time for resolution of civil matters in the Northern District of California is only slightly

---

[5] Doyle contends there is no actual conflict between the laws of either jurisdiction. (Defs.' Reply Br., ECF 14, at 5-10.)

8

longer than in the Eastern District of Pennsylvania.[6]

Ultimately, apart from Doyle's Philadelphia office, there is no connection between the claims in this case and the Eastern District of Pennsylvania and transfer to the Northern District of California is appropriate.

An Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.

---

[6] For the twelve-month period ending on March 31, 2021, the median time in months from filing to disposition for a civil case was 6.1 months here and 10.8 months in the Northern District of California. See United States District Court—National Judicial Caseload Profile, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2021.pdf (Last visited July 5, 2021). For civil cases proceeding to trial, the median time in months from filing to trial in this district was 19.7 months for the twelve-month period ending on March 31, 2020 and, in the Northern District of California, was 22.0 months. (Id.)